IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SAM WELLS,

       Plaintiff,

vs.                                                           Case No. 17–cv–029–DRH

KIMBERLY S. BUTLER,
MINH T. SCOTT,
REBECCA COWAN,
RANDY S. PFISTER,
CHAD M. BROWN,
ABERARDO SALINAS,
SALVADOR A. GODINEZ, and
LESLIE MCCARTY

       Defendants.

**MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

      Plaintiff Sam Wells, an inmate in Hill Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that happened at Menard Correctional Center and Pontiac Correctional Center. Plaintiff requests monetary damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

      (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

1

> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

## The Complaint

While incarcerated at Menard Correctional Center, plaintiff was placed on investigative status on March 28, 2014. (Doc. 1-1, p. 3). On April 22, 2014 plaintiff was served with an inmate disciplinary report for participation in a security threat group ("STG"). (Doc. 1, p. 8) (Doc. 1-1, pp 5-6). Plaintiff was put

on temporary confinement, and his adjustment committee hearing was delayed until May 8, 2014. (Doc. 1, p. 8). At that time, plaintiff was served with another disciplinary report dated May 8, 2014, although that report referenced the same subject as the April 22, 2014 report. (Doc. 1-1, pp. 8-9). The second disciplinary report was written at the behest of the Chief Administrative Officer, Kimberly Butler. (Doc. 1, p. 8). She directed that the report be revised in order to include additional information to substantiate the charge against plaintiff. (Doc. 1-1, p. 16). She also directed the adjustment committee to impose discipline of 1 year segregation, 1 year C-grade, and LOC. *Id.* Plaintiff alleges that this instruction violated the Illinois Administrative Code, specifically the section that prohibits the CAO from influencing an adjustment committee decision. (Doc. 1, p. 8). Plaintiff also alleges that Butler improperly *increased* his sanction, although the Complaint explicitly states that he was denied a hearing until after Butler remanded the initial disciplinary report and the exhibits submitted in support of the complaint do not show that an initial disciplinary hearing was performed or that discipline was imposed prior to the 1 year punishment. (Doc. 1, pp. 8-10).

Minh Scott and Rebecca Cowan imposed the sanction recommended by Butler in violation of the Illinois Administrative Code. (Doc. 1, p. 9). Plaintiff filed grievances contesting the alleged arbitrary acts by Butler, Scott, and Cowan. *Id.* On October 20, 2014, the Administrative Review Board ("ARB"), specifically McCarty and Godinez, remanded the ticket back to Menard so that the reporting officer could provide additional information to substantiate the charge and

3

directed Pontiac to rehear the ticket. *Id*. However, the remand order failed to address the allegedly improper 9 month sanction increase recommended by Butler. Plaintiff alleges that Godinez and McCarty violated the Illinois Administrative Code by failing to address this point. (Doc. 1, p. 10). Plaintiff further alleges that Godinez and McCarty were deliberately indifferent to the 4 months that plaintiff had already spent in segregation past the 3 months he should have received. *Id*.

Plaintiff was not reissued a new disciplinary ticket until approximately 3 months after the remand from the ARB. (Doc. 1-1, p. 21). The January 20, 2015 report was substantially the same as the April 22, 2014 and the May 8, 2014 reports. (Doc. 1, p. 11). On January 22, 2015, plaintiff appeared before the Pontiac Correctional Center Adjustment Committee, composed of Chad Brown and Aberarado Salinas. *Id.* The Pontiac Committee again found plaintiff guilty and sanctioned him to 1 year of segregation, despite the fact that plaintiff explained how Butler had violated the administrative code. *Id.* Plaintiff alleges that Brown, Salinas, and Pfister also violated the Illinois Administrative Code when they failed to act to reverse Butler's wrongful act. *Id.* Plaintiff alleges that Brown, Salinas, and Pfister retaliated against him because of letters, request slips, and grievance that plaintiff had filed. *Id.*

Plaintiff was released from segregation on March 27, 2015. (Doc. 1, p. 12). On April 27, 2015, the ARB issued a decision that the sanction increase from 3 months to 1 year violated the Illinois Administrative Code, and directed prison

administrators to reduce Plaintiff's punishment to 3 months. *Id.* However, by this time, plaintiff had already served the full year at Pontiac Correctional Center. *Id.* Plaintiff alleges that the extra 273 days he had to spend in segregation posed an atypical and significant hardship in relation to prison life in general population. *Id.* Specifically he alleges that while in general population, he had a job assignment and access to vocational classes, religious services, school, recreation, activities, and other support programs. *Id.* He also received 5 contact visits per month, daily telephone access, 3 showers per week, and 8 hours of recreation per week. *Id.* In contrast, in disciplinary segregation, plaintiff was confined to his cell 24 hours a day. *Id.* He received no telephone privileges, only 2 non-contact visits per month, 1 shower per week, 4 hours of recreation per week, and no support or recreational programing. *Id.* Plaintiff was also subject to restrictions on what property he could keep in his cell or purchase at the commissary. *Id.*

## Discussion

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into 5 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. All claims must be dismissed at this time:

> **Count 1 –** Defendants Butler, Scott, and Cowan, violated plaintiff's due process rights in violation of the Fourteenth Amendment when they failed to follow the Illinois Administrative Code when Butler directed Scott and Cowan to impose a certain sentence on plaintiff;

**Count 2 –** Defendants Brown, Salinas, and Pfister violated plaintiff's due process rights under the Fourteenth Amendment when they disregarded the Illinois Administrative Code and re-imposed the 1 year sanction on plaintiff upon rehearing;

**Count 3 –** Defendants Godinez and McCarty violated plaintiff's due process rights under the Fourteenth Amendment when they responded to plaintiff's grievance without immediately addressing the 9 month sanction increase that allegedly violated the Illinois Administrative Code and failed to order plaintiff's immediate release from segregation;

**Count 4 –** Defendant Randy Pfister was deliberately indifferent to the unconstitutional conditions of confinement at Pontiac Correctional Center in violation of the Eighth Amendment;

**Count 5 –** Defendants Brown, Salinas, and Pfister retaliated against plaintiff by disregarding the Illinois Administrative Code's prohibition on increasing a sanction when they reheard plaintiff's disciplinary ticket on remand in response to plaintiff's grievances, letters, and other requests.

As to **Count 1** and **Count 2,** when a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The Seventh Circuit has limited the ability of prisoners to assert that terms in segregation implicate a liberty interest. *Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697 (7th Cir. 2009). Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). In assessing whether disciplinary segregation amounts to a constitutional violation, a court must

examine the length of a prisoner's confinement in segregation in combination with the conditions he endured there. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest *may* arise from a term of confinement combined with atypical and significant hardships, depending on the severity of the conditions, and any additional punishments. *Kervin*, 787 F.3d at 836.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against him twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a

meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Plaintiff alleges that he was confined in segregation for a full 12 months, and that 9 of those months were later determined by the ARB to violate the Illinois Administrative Code. However, the Court finds that plaintiff has failed to allege that he was deprived of a liberty interest or that the hearing deprived him of his procedural due process.

First, plaintiff's claims do not establish that he was deprived of a liberty interest as a matter of law. Plaintiff alleges that he served 9 months more in segregation than he should have. Nine months is a sufficient amount of time to trigger inquiry into the conditions of confinement that plaintiff endured, but all plaintiff has alleged is that segregation has much fewer privileges and educational opportunities than general population. That is not the relevant standard. If all a prisoner needed to allege was that conditions in segregation had fewer privileges than general population, then any stint in segregation would state a due process claim—a position which the Supreme Court has rejected. *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (rejecting rule that solitary confinement automatically triggers due process protection, and requiring a prisoner to show that the segregation presents "atypical, significant deprivations"). Plaintiff's allegations the he was subject to "atypical, significant deprivations" are conclusory and implausible. He has not alleged that he was exposed to any unconstitutional conditions of confinement, a point which the Court will address in further detail

8

below. He has also not alleged that he actually suffered any harm, mentally[1] or physically as a result of his extended stint in segregation. The loss of privileges that plaintiff experienced are typical incidents of prison life; nothing in his complaint suggests that they were "atypical." For these reasons, plaintiff's complaint does not adequately allege that he was deprived of a liberty interest.

Even if he had, his claim would still fail because the complaint does not show that plaintiff was deprived of due process. First, plaintiff repeatedly states that the defendants violated the applicable Illinois Administrative Code provisions, both in the timing of the May 8 hearing and in the manner in which his 1 year sentence was imposed. Indeed, it appears that these deficiencies were the reason why the ARB ultimately ruled in plaintiff's favor and rescinded the additional 9 months of segregation. An administrative code violation, however, does not translate into a constitutional violation upon which a civil rights claim may rest. A federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Therefore, the failure to follow the Illinois Administrative Code does not establish a Fourteenth Amendment due process claim.

Secondly, *Wolff* delineates the nature of due process protections that a prisoner is due, and plaintiff's complaint fails to allege that he was deprived of

---

[1] An inmate cannot recover compensatory damages for mental harms without a physical injury under the Prison Litigation Reform Act, but as that provision is not grounds for dismissal of an otherwise valid constitutional claim, the Court only mentions it in passing.

any of the *Wolff* protections. Plaintiff's complaint establishes that he received written notice of the charges against him prior to the hearing, that he appeared before the adjustment committee in person and was permitted to submit a statement, and that he received a written record of the adjustment committee findings. Plaintiff has not alleged that he was deprived of due process as to either the Menard or Pontiac disciplinary hearing. The main problem that plaintiff repeatedly returns to was that Butler directed the Menard adjustment committee to impose a certain sentence and that no one who subsequently reviewed the discipline overturned it, but plaintiff alleges that action violates the Illinois Administrative Code, not *Wolff*. For the above reasons, **Counts 1** and **2** must be dismissed with prejudice at this time because they are frivolous.

**Count 3** must also be dismissed with prejudice. Plaintiff alleges that Godinez and McCarty failed to adequately respond to his grievance because they ordered his disciplinary ticket reheard instead of ordering his immediate release. The grievance procedure is not constitutionally mandated, and any mishandling or oversight in the adjudication of a grievance will not support a § 1983 claim. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Plaintiff's claim that Godinez and McCarty failed to respond to his grievances in the manner that plaintiff would have preferred is foreclosed by the relevant case law. Although some recent cases suggest that grievances may be adequate to put defendants on notice of a serious risk for the

purposes of a deliberate indifference claim, that line of reasoning has not been extended to cases alleging due process violations. **Count 3** will be dismissed as frivolous.

**Count 4** shall be dismissed without prejudice for failure to state a claim upon which relief can be granted. The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id,* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501

U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if

the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Here, plaintiff has not alleged that he was deprived of life's necessities, or that he was subjected to a risk of serious harm. In fact, he has not alleged that he suffered any harm at all. Plaintiff has alleged that he was deprived of certain privileges and opportunities of the general population section. But plaintiff has no constitutional right to those privileges and opportunities, provided his basic necessities are being met. The purpose of segregation is often punitive, and it takes its character from the attendant loss of privileges and opportunities. The loss of privileges standing alone does not state a conditions of confinement claim. And even if it did, plaintiff has not alleged that Pfister had the requisite subjective state of mind. He has not alleged that he took any steps to put Pfister on notice of his complaints regarding the conditions at Pontiac. Plaintiff's **Count 4** thus fails to adequately allege both the objective and subjective component. **Count 4** will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

As to Plaintiff's **Count 5**, to succeed on a First Amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First

13

Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action. The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.*

Here, plaintiff's allegations are not plausible. Although plaintiff has used the words "retaliation" and "retaliatory" throughout the complaint, there is only one instance where he alleges that he actually engaged in protected conduct. Plaintiff alleges that the Pontiac defendants reinstated his previous sanction because he filed grievances, letters, and complaints. But this allegation is conclusory. Plaintiff has not even alleged that the defendants knew that he filed grievances, letters, or complaints, much less that he directed any such correspondence to Brown, Salinas, or Pfister personally. Further, the complaint is explicit that Brown, Salinas, and Pfister conducted another disciplinary hearing at the behest of the ARB. To accept plaintiff's complaint is to accept the dubious proposition that the Pontiac defendants both wanted to "get" plaintiff and were

14

also content wait for a third party to provide them with the opportunity. Plaintiff has also failed to allege that re-imposing a sanction previously imposed is the kind of activity that would deter a reasonable person from engaging in protected activity or that he was deterred from engaging in protected activity. The Court notes that Plaintiff had already served approximately 75% of his segregation time at the time of the rehearing, suggesting that most of the additional time he alleges he spent in segregation is attributable to the Menard Adjustment Committee, not the Pontiac Committee. At this time, the Court does not find plaintiff's allegations plausible. **Count 5** will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### Pending Motions

Plaintiff's Motion for IFP remains pending; the Court is waiting on additional information and will address that Motion via separate order. (Doc. 6).

Plaintiff's Motion for Recruitment of Counsel will be **DENIED** at this time. (Doc. 3). When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question … is whether the plaintiff appears competent to litigate his own claims, given their

degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

Here plaintiff has affirmatively stated that "I haven't contacted any attorney." (Doc. 3, p. 1). Having made no effort, the Court cannot say that plaintiff's efforts have been reasonable. Plaintiff's Motion for Recruitment is **DENIED** for failure to make the threshold showing. (Doc. 3).

Plaintiff's motion for service of process at government expense is **DENIED** as **MOOT** because the Court will not order service on any defendant at this time. (Doc. 2).

### Disposition

**IT IS HEREBY ORDERED** that **Counts 1-3** are **DISMISSED** with prejudice as frivolous claims. **Counts 4 and 5** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

Defendants Butler, Scott, Cowan, Godinez, and McCarty are **DISMISSED** with prejudice. Defendants Pfister, Brown, and Salinas are **DISMISSED** without prejudice. As no claims remain, the Complaint is **DISMISSED** without prejudice at this time.

Plaintiff's Motion for Recruitment of Counsel is **DENIED**. (Doc. 3) Plaintiff's Motion for Service of Process is **DENIED** as **MOOT**. (Doc. 2).

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, plaintiff shall file his first amended complaint, stating any facts which may exist to support Count 4 and/or Count 5, on or before May 12, 2017. An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the first amended complaint must stand on its own, without reference to any other pleading. Should the first amended complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the first amended complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Plaintiff is warned, however, that the Court takes the issue of perjury seriously, and that any facts found to be untrue in the amended complaint may be grounds for sanctions, including dismissal and possible criminal prosecution for perjury. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand).

No service shall be ordered on any defendant until after the Court completes its § 1915A review of the first amended complaint.

In order to assist plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: April 12, 2017**

Judge Herndon
2017.04.12
08:50:48 -05'00'

**United States District Judge**